John J. CUNEO, Regional Director of the Twenty-Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 825 and Peter Weber, its Agent, Respondents.

Civ. A. No. 808–62.

United States District Court
D. New Jersey.

April 16, 1963.

James M. Fitzpatrick, Washington, D. C., Bernard L. Balicer, N. L. R. B., Newark, N. J., for petitioner.

Michael Breitkopf, Newark, N. J., John J. Mooney, New York City, for respondents.

Vincent J. Apruzzese, Richard J. Casey, Newark, N. J., for charging party.

AUGELLI, District Judge.

This is an action filed by the National Labor Relations Board ("Board"), pursuant to section 10($l$) of the National Labor Relations Act ("Act"), as amended, 29 U.S.C.A. § 160($l$), for a temporary injunction pending the final disposition by the Board of charges filed by Building Contractors Association of New Jersey ("Association"), alleging that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of section 8(b) (4) (A) and (B) of the Act, 29 U.S.C.A. § 158(b) (4) (A) and (B), which prohibit so-called "hot cargo" contracts and "secondary boycotts", respectively.

Respondent International Union of Operating Engineers, Local 825, is a labor organization within the meaning of section 2(5) of the Act, 29 U.S.C.A. § 152

(5). Respondent Peter Weber, business manager of Local 825, is an agent of respondent Local 825 as defined in section 2(13) of the Act, 29 U.S.C.A. § 152(13). Respondents have acted and are authorized to act on behalf of employee members of Local 825 within the State of New Jersey in collective bargaining negotiations, and to enter into and perform collective bargaining agreements with the Association.

The Association contains approximately 135 employers engaged in the construction industry in New Jersey and elsewhere, and is an employer within the meaning of section 2(2) of the Act, 29 U.S.C.A. § 152(2). Members of the Association are engaged in commerce or in an industry affecting commerce within the meaning of section 2(6) and (7) of the Act, 29 U.S.C.A. § 152(6) and (7). The Association has conducted and is authorized to conduct collective bargaining negotiations on behalf of its members with respondents.

On April 27, 1962, respondents sent to the Association 45 opening demands for a new collective bargaining agreement to be effective July 1, 1962, which included a proposal for a subcontractor clause. That clause was subsequently presented to the Association in the following form:

"This Agreement shall bind all sub-contractors while working for an Employer who is a party to this Agreement. Any Employer who sublets any of his work must sublet the same subject to all the terms and conditions of this agreement."

Negotiations between the Association and respondents for a collective bargaining agreement continued intermittently up to the time of the hearing in this Court; but, except for 8 members of the Association who signed an agreement containing a subcontractor clause, no accord was reached. In the meantime, various work stoppages occurred in August and November, 1962 on construction job sites where members of the Association were working. On November 14, the parties were before this

Court, at which time a stipulation was entered into whereby the parties resumed bargaining negotiations, which continued until an impasse was again reached, whereupon the present proceeding was reinstated. No work stoppages have occurred since November 14, 1962.

█ The Board argues essentially that the August and November, 1962 work stoppages were for the purpose of pressuring the members of the Association to enter into a collective bargaining agreement containing the subcontractor clause, in violation of section 8(b) (4) (A) and (B) of the Act. Of course, in a section 10(l) proceeding of this nature, the Court must determine only whether or not the Board has "reasonable cause to believe" that the unfair labor practice charged has been committed. Schauffler v. Local 1291, International Longshoremen's Association, 292 F.2d 182 (3 Cir. 1961).

Section 8(b) (4) (A) and (B) provides, in pertinent part, that:

"It shall be an unfair labor practice for a labor organization or its agents—

\*   \*   \*   \*   \*   \*

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

"(A) forcing or requiring any employer \* \* \* to enter into any agreement which is prohibited by subsection (e) of this section;

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise

dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, * * * *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing * * *."

Section 8(e) of the Act, referred to in section 8(b) (4) (A) above, provides, in part, as follows:

"It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: *Provided,* That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work * * *."

■ Section 8(b) (4) (A) of the Act prohibits work stoppages to obtain a "hot cargo" agreement prohibited by section 8(e) of the Act. The subcontractor clause here involved is such an agreement in that it would prevent Association members from doing business with any subcontractor who does not agree to abide by the terms of the collective bargaining agreement between the respondents and the Association. However, the Court finds that the work stoppages in question, in so far as they were intended to induce members of the Association to agree to a subcontractor clause with respondents, come within the construc-

tion industry proviso in section 8(e), "relating to the * * * subcontracting of work to be done at the site of the construction". In reaching this conclusion, the Court feels obliged to follow the decision of Judge Wortendyke in Cuneo v. Essex County & Vicinity District Council, etc., 207 F.Supp. 932 (D.N.J. 1962), notwithstanding the several Board decisions to the contrary. Therefore, the Court finds that there was no reasonable cause to believe that respondents have committed an unfair labor practice under section 8(b) (4) (A) of the Act.

Section 8(b) (4) (B) of the Act was not involved in Judge Wortendyke's decision. The Board claims that respondents' strike action against members of the Association to force them to enter into a collective bargaining agreement containing a subcontractor clause, which would require them to cease doing business with subcontractors who are not covered by such agreement, is per se a violation of section 8(b) (4) (B) of the Act. The Court does not agree with this contention. Since the proviso in section 8(e) of the Act protects, under section 8(b) (4) (A), work stoppages to obtain a subcontractor clause, such action by respondents against members of the Association cannot be unlawful under section 8(b) (4) (B) of the Act. Otherwise, the proviso in section 8(e) would be rendered meaningless.

■ The Board also contends that respondents have taken certain strike action against subcontractors who are not members of the Association in order to pressure such members to sign an agreement containing the subcontractor clause. Such action, if proved, would constitute an illegal secondary boycott under section 8(b) (4) (B) of the Act. See N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). The only testimony that was adduced on this point at the hearing before this Court concerned the Flintkote Company and Meade Paper Company jobs in this Dis-

trict. On the Flintkote Company job, John D. Lawrence, Inc., a member of the Association, subcontracted part of the work to Gaskill Construction Company, a nonmember of the Association. On the Meade Paper Company job, Mahony-Troast, an Association member, subcontracted part of the work to Long Construction & Excavating Company and Linde-Griffith Company, both non-members of the Association.

There was testimony that on both jobs, members of Local 825, employed by Gaskill, Long and Linde-Griffith engaged in work stoppages in August, 1962. The Court finds there is reasonable cause to believe that these work stoppages by employees of non-members of the Association were for the purpose of forcing their employers, Gaskill, Long and Linde-Griffith, to cease doing business with Association members, John D. Lawrence, Inc. and Mahony-Troast, and to coerce the latter to enter into a collective bargaining agreement with Local 825. Such activity, in the opinion of the Court, would be in violation of section 8(b) (4) (B) of the Act, and should be enjoined pending disposition of the matter by the Board.

In view of the Court's agreement with the views expressed by Judge Wortendyke in Cuneo v. Essex County, etc., D.C., 207 F.Supp. 932, the temporary injunction to be issued here will be limited to illegal secondary boycott activity. Respondents will be restrained, pending determination of the matter by the Board, from engaging in, or causing, work stoppages or other strike activity by Local 825 employees of non-members of the Association for the purpose of forcing non-members of the Association to cease doing business with members thereof or by such activity to coerce members of the Association to enter into a collective bargaining agreement with Local 825.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate order may be submitted on notice.